654 S.E.2d 502 (2007)
In the Matter of T.M. and M.M., Jr., Minor Children.
No. COA07-911.
Court of Appeals of North Carolina.
December 18, 2007.
Staff Attorney Elizabeth Kennedy-Gurnee, Fayetteville, for Cumberland County Department of Social Services appellee.
Attorney Advocate Beth A. Hall, Fayetteville, for Guardian ad Litem.
Don Willey, Jefferson, for respondent-father-appellant.
Judy N. Rudolph, Weaverville, for respondent-mother-appellant.
BRYANT, Judge.
Respondent-mother (A.M.[1]) and respondent-father (M.M., Sr.) appeal from an adjudication and disposition order entered 23 April 2007. T.M. was adjudicated abused and neglected based on findings of fact that she suffered injuries consistent with Shaken Baby Syndrome, and that the injuries were non-accidental and caused by either one or both of the respondent-parents. M.M., Jr. was adjudicated neglected in that he lived in an environment injurious to his welfare because he lived in the home where T.M. was abused.
After T.M. experienced several days of vomiting and irritability, respondents took her to the Womack Army Medical Center Emergency Room because she was nonresponsive. Due to the severity of her injuries, she was transported by helicopter to UNC Hospital. On 12 November 2005, T.M. was diagnosed with a non-accidental head injury. On 13 November 2005, it was determined the injuries were a result of T.M. being shaken. Dr. Keith Kocis, a pediatrician and expert in the field of diagnosis and treatment of critically ill children, admitted T.M. to UNC. He testified she scored a 7 on the Glascow Coma Score, which was "a number consistent with severe neurologic dysfunction."
On 14 November 2005 a petition for abuse and neglect was filed by Cumberland County Department of Social Services (DSS) and a nonsecure custody order was issued for T.M. and M.M., Jr. On 30 November 2005, the trial court ordered respondents could have supervised visitation with T.M. and M.M., Jr. At that time, M.M., Jr. was placed in the paternal grandmother's home and a home study was ordered. Upon release from the hospital, T.M. was placed with the paternal grandmother in April 2006.
On 5 January 2006, respondent-father made an oral motion requesting that a medical expert review the records in the case, which was reduced to writing on 23 September 2006. On 21 November 2006, the trial court filed an order which included findings of fact that "[i]t has taken a significant amount of time to locate an expert in as much as despite counsel's diligent work to locate an expert witness, they have been turned down by numerous experts." The trial court also found "[t]hat it has been for good cause shown that the time for trial has lapsed" and "[t]hat it has been determined that a Special Session will be required to hear this matter in that it is anticipated that it will take three to five (3-5) days for trial." The trial court found "[t]hat the [trial] Court currently has special sessions scheduled through November and December; there is no available trial time until next year." Based on the time delay, the trial court made a "good cause" finding for the case to be continued to early 2007.
In March 2007, the trial court conducted a six-day hearing adjudicating T.M. abused *504 and neglected and M.M., Jr. neglected. From the 23 April 2007 adjudication and disposition order, respondents appeal.
Respondent-mother raises four arguments on appeal. First, respondent-mother argues that the trial court erred by admitting medical records into evidence without proper foundation as required by N.C. Gen.Stat. § 8C-1, Rule 803(6) (2005). Respondent-mother's second and third arguments are that the trial court's findings of fact and conclusions of law are not properly supported, based on the fact that the medical records were erroneously admitted. Fourth, respondent-mother argues that the trial court committed reversible error by failing to comply with the statutory time period for adjudicating the petition.
Respondent-father raises three arguments on appeal. First, respondent-father argues that the trial court erred by reserving the right to make additional findings of fact out of court and out of session. Second, respondent-father asserts that there was insufficient evidence to support the adjudication of abuse. Third, respondent-father argues, as respondent-mother argues, that the trial court committed reversible error by failing to comply with the statutory time period for adjudicating the petition.
Respondent-mother argues the trial court committed reversible error by admitting the medical records into evidence without a proper foundation. At the beginning of the hearing, DSS sought admission of all the medical records pursuant to "the local rules[.]" The local rule relied on by DSS, Rule 10.3 of the Twelfth Judicial District Juvenile Case Management Plan, states as follows:
The GAL attorneys and volunteers regularly obtain copies of the medical records of the parents and children in cases alleging abuse and/or neglect pursuant to statutes or court orders allowing them access to said records.
(a) GAL shall request the records and upon receipt notify the DSS and respondent attorneys that they are available for review.
(b) Attorneys may review the records in the GAL office and may make copies of the records. GAL will number the pages of the records and prepare a sheet for each attorney to sign indicating their review of the records. Attorneys may provide copies of their client's records to that client.
(c) Attorneys must make objections to the admission of the records within ten (10) working days of the notice of availability of the records or the records may be admitted without objection.
(d) The GAL may apply to the Court at any time, with notice to all parties, to destroy non-relevant records.
(e) Attorneys are authorized to destroy copies of the records sixty (60) days following a voluntary or involuntary dismissal of the action, a TPR judgment, an order awarding guardianship of the children, an order returning custody to the parents with no further reviews, or any other action that finally terminates the case and no appeal has been filed.
Rule 10.3, Twelfth Judicial District Juvenile Case Management Plan (emphasis added). Although no objection was made to the records within the ten days as provided by Rule 10.3, respondent-father objected at the hearing "to the tender of the medical records without the proper foundation." In response, DSS argued that the medical records should be admitted pursuant to Rule 10.3. The trial court ruled that because respondent-father had failed to object within ten days as provided by Rule 10.3, the medical records were deemed admissible.[2]
*505 North Carolina General Statutes, Section 7B-804 states "[w]here the juvenile is alleged to be abused, neglected, or dependent, the rules of evidence in civil cases shall apply." In re E.P., ___ N.C.App. ___, ___, 645 S.E.2d 772, 773 (2007). Under the North Carolina Rules of Evidence, statements, other than those made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted are hearsay and are generally inadmissible. N.C. Gen.Stat. § 8C-1, Rules 801(c), 802 (2005). The "business records exception" to the hearsay rule is found in North Carolina General Statutes, section 8C-1, Rule 803(6), which provides in relevant part:
A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness is not excluded by the hearsay rule.
N.C.G.S. § 8C-1, Rule 803(6) (2005). In addition, medical records are admissible pursuant to N.C. Gen.Stat. § 8C-1, Rule 703 which states:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
N.C.G.S. § 8C-1, Rule 703 (2005). This Court has stated that:
The mere admission by the trial court of incompetent evidence over proper objection does not require reversal on appeal. "Rather, the appellant must also show that the incompetent evidence caused some prejudice." In the context of a bench trial, an appellant "must show that the court relied on the incompetent evidence in making its findings." "Where there is competent evidence in the record supporting the court's findings, we presume that the court relied upon it and disregarded the incompetent evidence."
In re Huff, 140 N.C.App. 288, 301, 536 S.E.2d 838, 846 (2000) (internal citations omitted), review denied, appeal dismissed, 353 N.C. 374, 547 S.E.2d 9 (2001); see also In re L.C., 181 N.C.App. 278, 284, 638 S.E.2d 638, 642 (2007) ("In a bench trial, `it will be presumed that the judge disregarded any incompetent evidence that may have been admitted unless it affirmatively appears that he was influenced thereby.'") (quoting Stanback v. Stanback, 31 N.C.App. 174, 180, 229 S.E.2d 693, 696 (1976), disc. review denied, 291 N.C. 712, 232 S.E.2d 205 (1977)). Further, "a physician, as an expert witness, may render his opinion, including a diagnosis, based either on personal knowledge or observation or on information supplied to him by others, including the patient, if the information is inherently reliable, even though such information is independently admissible into evidence; and if the expert's opinion is admissible, the expert may testify to the information he relied upon in forming it, for the purpose of showing the basis of the opinion." State v. Spangler, 314 N.C. 374, 385, 333 S.E.2d 722, 729 (1985) (citations omitted) (A *506 doctor's testimony was admissible when he relied upon certain tests administered by hospital staff.).
The respondents have the burden of showing prejudice at the trial court's admission of the volumes of medical records. However, they are unable to do so in the instant case. Over the course of the six-day hearing, petitioner presented the sworn testimony of eight witnesses, five of whom were trained medical personnel and three of whom were qualified and accepted by the trial court as expert witnesses. Detailed expert testimony regarding personal observations and opinions provided the court with clear, cogent and convincing evidence that T.M. was abused.
Dr. Keith Kocis, Director of Pediatric Intensive Care Unit at UNC, was tendered by the court as an expert in the treatment of critically ill children who have been victims of child abuse. As T.M.'s admitting physician at the UNC Hospital Intensive Care Unit, Dr. Kocis arranged for T.M.'s transport from Womack Army Medical Center. He testified it was clear T.M. was desperately ill and unable to breathe on her own with very minimal brain function. He further testified she scored a 7 on the Glascow Coma Score, which was "a number consistent with severe neurologic dysfunction" and that "it became very clear that [T.M.] had a life threatening brain injury and [that] the type of brain injury that she was showing [was] very consistent and very commonly found with non-accidental trauma." Dr. Kocis described the subdural hematomas of differing ages as, "a screaming red flag of shaken baby syndrome." Based on Dr. Kocis' observations, T.M. had multiple levels of brain injury and "it was a profound injury affecting almost all aspects of the brain." Dr. Kocis stated "[c]ertainly the constellation of what we saw is shaken baby syndrome."
Joyce Moore, Registered Nurse, was tendered as an expert in the field of forensic pediatric nurse consultation. Nurse Moore has thirty years experience on the UNC Beacon Team (combined child maltreatment assessment, child protection services, domestic violence and elder abuse) and the Child Medical Evaluation program at UNC. Nurse Moore testified she coordinated T.M.'s treatment, spoke directly with respondent-father and personally reviewed the medical records in forming her opinion. Nurse Moore testified in her expert opinion, T.M.'s injuries were inflicted by trauma.
Dr. Kenneth Lury, Neuroradiologist at UNC, was tendered as an expert in the field of diagnostic neuroradiology and was a part of the UNC team caring for T.M. He testified extensively as to the types of images used to diagnose T.M. and during his testimony showed the trial court images of T.M.'s brain. Dr. Lury testified that based on the presence of blood of varying ages in T.M.'s brain and other physical evidence he observed, it was his opinion T.M.'s injuries were due to a non-accidental trauma.
It is clear from the detailed findings of fact and conclusions of law that the trial court relied on the significant and extensive medical testimony of these experts. While petitioners did not lay a proper foundation for the admission of medical records, the extensive firsthand medical testimony by Drs. Kocis and Lury and Nurse Moore in treating T.M. provided more than sufficient evidence to support a finding and conclusion that T.M. was abused. Respondents have not met their burden of showing they were prejudiced by the admission of the medical records. We reject respondent's contention that without the medical records in evidence the trial court could not have found and concluded T.M. was abused. See Huff, 140 N.C.App. at 301, 536 S.E.2d at 846 (citation omitted) ("Where there is competent evidence in the record supporting the court's findings, we presume that the court relied upon it and disregarded the incompetent evidence."). Each of the challenged findings of fact were supported by clear, cogent and convincing evidence. These assignments of error are overruled.
Next, respondents argue the trial court committed reversible error by failing to comply with the statutory time period for conducting the adjudicatory hearing. The juvenile petition was filed on 14 November 2005. The adjudicatory hearing was held in March 2007, sixteen months after the petition was filed. Pursuant to N.C. Gen.Stat. § 7B-801(c) (2005), "[t]he adjudicatory hearing *507 shall be held . . . no later than 60 days from the filing of the petition unless the judge pursuant to G.S. 7B-803 orders that it be held at a later time." N.C. Gen.Stat. § 7B-803 provides that:
The court may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile.
N.C. Gen.Stat. § 7B-803 (2005).
Here, continuances were entered due to a request for a special court setting based on the length of time needed for a trial, and because respondents sought funds to hire an expert witness. Additional delay resulted from respondents' inability to retain an expert who would agree to review the medical records. On 17 November 2006, the trial court entered an order stating counsel had "taken a significant amount of time to locate an expert in as much as despite counsel's diligent work to locate an expert witness, they have been turned down by numerous experts." Furthermore, noting the request for a special setting to hold the trial, the court indicated January 2007 was the first available time for a special setting. Thus, the court found "for good cause shown that the time for trial has lapsed." A pre-adjudication conference was held on 4 January 2007. The trial court again noted in its order that the time for trial had lapsed "for good cause shown" and continued the matter. The matter was finally calendared for trial for 19 March 2007. Therefore, most of the delay was attributed to respondents' search for an expert witness, and respondents' request for a special trial setting, and not as respondents have argued, due to the trial court. See In re D.J.D., 171 N.C.App. 230, 243, 615 S.E.2d 26, 35 (2005) (since respondent moved for the continuance, he could demonstrate no prejudice from any delay in holding the termination hearing). Furthermore, respondents have not articulated any specific prejudice resulting from the delay. See In re S.N.H. and L.J.H., 177 N.C.App. 82, 627 S.E.2d 510 (2006) (mere passage of time alone is not enough to show prejudice). This assignment of error is overruled.
Lastly, respondent-father argues the trial court erred by reserving "the right to make additional findings out of Court and out of session consistent with the evidence and testimony presented." N.C. Gen.Stat. § 1A-1, Rule 61 states:
No error in either the admission or exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action amounts to the denial of a substantial right.
N.C.G.S. § 1A-1, Rule 61 (2005). Respondent-father has failed to cite any finding made by the trial court "out of Court," and none appear on the face of the record. As respondent-father has not shown how he was prejudiced, this assignment of error is overruled.
Affirmed.
Chief Judge MARTIN and Judge McCULLOUGH concur.
NOTES
[1] Initials are used throughout the opinion to protect the identity of the juveniles.
[2] "The General Assembly has authorized our Supreme Court to promulgate rules of practice and procedure for the superior and district courts." In re J.S., ___ N.C.App. ___, ___, 641 S.E.2d 395, 397 (2007) (citing N.C. Gen.Stat. § 7A-34 (2005)). "Pursuant to this authority, our Supreme Court requires the Senior Resident Judge and Chief District Judge in each judicial district to `take appropriate actions [such as the promulgation of local rules] to insure prompt disposition of any pending motions or other matters necessary to move the cases toward a conclusion.'" Id. at ___, 641 S.E.2d at 398 (quoting N.C. Gen. R. Prac.Super. and Dist. Ct. 2(d) (2007)). Rule 10.3 was promulgated pursuant to this authority. However, rules enacted pursuant to this authority are to be "supplementary to, and not inconsistent with, acts of the General Assembly." N.C. Gen.Stat. § 7A-34 (2005). "Wide discretion should be afforded in [the] application [of local rules] so long as a proper regard is given to their purpose." Lomax v. Shaw, 101 N.C.App. 560, 563, 400 S.E.2d 97, 98 (1991) (quoting Forman & Zuckerman, P.A. v. Schupak, 38 N.C.App. 17, 21, 247 S.E.2d 266, 269 (1978)). Rule 1.0 of the Twelfth Judicial District Juvenile Case Management Plan states that the purpose of the rules is to "provide for the orderly, prompt and just disposition of Juvenile Civil Matters." Further, the rules are to "be construed in such manner as to promote justice and avoid delay." On its face, Rule 10.3 was not intended to be an evidentiary rule. Instead, the local rules of court, including Rule 10.3, are designed to promote the efficient administration of justice and are to be applied toward such intended purpose.