IN THE MATTER OF: D.J.C., Juvenile.
No. COA09-242
Court of Appeals of North Carolina.
Filed June 16, 2009
This case not for publication
Peter C. McCrea, for Petitioner-Appellee Lincoln County Department of Social Services.
Jon W. Myers, for Respondent-Appellant mother.
Pamela Newell Williams, for Guardian ad Litem.
BEASLEY, Judge.
R.C. (Respondent), mother of D.J.C.[1], appeals from an order terminating her parental rights. For the reasons stated below, we affirm.
On 5 December 2005, the Lincoln County Department of Social Services (Petitioner) filed a petition alleging that D.J.C. was a neglected juvenile in that she did not receive proper care, supervision, or discipline and lived in an environment injurious to her welfare. Petitioner alleged that on 3 December 2005, Petitioner went to Respondent's home in an effort to gain custody of D.J.C.'s half-sibling. Upon entering the home, the social worker found that the home was unsanitary and contained fire hazards. Specifically, Petitioner noted that the home was heated solely with a wood stove and that Petitioner observed boxes stacked occupying an entire corner of the room where the stove is located approximately 2 to 3 feet from the stove; there was also a paper grocery bag lying almost touching the stove. The child had free access to the stove with no barrier around the stove.
Petitioner further alleged that the Lincoln County Fire Marshal had inspected the home on 5 October 2005 and issued a citation for: (1) a drop cord running from the house to the barn; (2) padlocks on the doors; (3) obstructed windows; (4) old wiring for a hot water heater; (5) the disrepair and uncleanliness of the chimney and flue; (6) an obstructed back door; and (7) the disrepair of the wiring in the house. The Fire Marshal also warned in the citation that there should be no smoking in the house. However, when Petitioner visited the home, D.J.C.'s grandmother was smoking in the house and ash trays were lying around the living room. The Fire Marshal further noted that the housekeeping was unsatisfactory, and the social worker likewise observed that there were dirty dishes on the kitchen table.
Petitioner asserted that Respondent had displayed an unwillingness to cooperate with the social worker and had "shown a disregard for improving her situation and those of her children." As an example, Petitioner alleged that Respondent had left town for the weekend with a convicted sex offender and without leaving any contact information. Petitioner claimed that Respondent left her children with D.J.C.'s grandmother, who suffered health limitations. Accordingly, Petitioner obtained custody of D.J.C. by a non-secure custody order.
On 27 February 2006, during an adjudication hearing, Respondent admitted and the trial court concluded that D.J.C. was a dependent juvenile and custody was continued with Petitioner. On 23 March 2006, at the disposition hearing, the trial court found as fact that on 23 January 2006, D.J.C. had been placed with Respondent in the home of Tim Belton (Belton). The court found that the placement, as well as Belton's residence, had been approved by the court. Subsequently, Respondent took the juvenile from the Belton residence without notifying the court or Petitioner. Petitioner was able to contact Respondent, but she was "unwilling or unable to give them an address or a location where she [was] living with the child." The court ordered that D.J.C. be removed from Respondent's care "immediately" and be placed with Petitioner to find suitable placement. Petitioner, with the assistance of law enforcement, was eventually able to locate D.J.C. and regain custody of the juvenile. The trial court ordered that Respondent: (1) participate in parenting classes and any support service that will enable her to provide a safe and proper home for the juvenile; (2) participate in any employment; (3) receive counseling services; and (4) take advantage of any housing service to secure appropriate housing for the juvenile and herself.
A permanency planning review hearing was held on 17 December 2007. The trial court made the following findings: 9. That the [Respondent] has basically complied with most of the Court Orders and requirements for her. However, two of the more critical elements for completion, having a proper place to live for herself and her daughter and having stable full-time employment have not been achieved. The Court has admonished the [Respondent] over the last number of hearings about finding an adequate place for her and her daughter to live.
10. That the [Respondent] had informed the court that she has found a place to live but this was questioned by the Department. . . .
11. That the Court is informed by the [Respondent's] attorney that she does not have a place for her and her daughter to live.
12. That the Court finds that in light of the foregoing and in the best interest of the Juvenile, that reunification efforts with the mother cease at this time.
Accordingly, the trial court terminated reunification efforts and ordered that the permanent plan for D.J.C. be changed to a concurrent plan of adoption or guardianship.
On 15 February 2008, Petitioner filed a petition to terminate Respondent's parental rights. Petitioner alleged that Respondent had neglected D.J.C. within the meaning of N.C. Gen. Stat. § 7B-101(15), and that it was probable that there would be a repetition of the neglect should the child be returned to Respondent's care. Specifically, Petitioner alleged that Respondent: (1) failed to maintain stable housing; (2) failed to maintain stable employment; and (3) had absconded with the child while the child was in Petitioner's custody. Further, the child had lived in foster care continuously since 6 June 2006, without Respondent "making anywhere near sufficient progress to have an adequate income or a place to live."
On 6 and 7 October 2008, at the hearings to terminate Respondent's parental rights, the trial court concluded that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2) to terminate Respondent's parental rights . The trial court concluded that it was in D.J.C.'s best interests that Respondent's parental rights be terminated. From this order, Respondent appeals.

TERMINATION OF PARENTAL RIGHTS
Respondent argues that the trial court erred by finding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111 to terminate her parental rights. Respondent contends that she remedied the conditions that led to D.J.C.'s removal from her home. Specifically, Respondent cites uncontradicted evidence that in 2006, she and her mother cleaned up their home to make it habitable. At the termination hearing, Respondent introduced photographs purportedly showing the improvements made to the home. The trial court, while considering this evidence, nevertheless found that the home was "not a safe and appropriate place" for D.J.C. Respondent asserts that Petitioner had not visited her home since 2006, and that DSS presented no evidence about the current condition of the home. Respondent thus asserts that Petitioner failed to carry its burden of proving that the conditions of neglect existed at the time of the termination hearing. We disagree.
N.C. Gen. Stat. § 7B-1111 (2007) sets forth the statutory grounds for terminating parental rights. A finding of any one of the enumerated grounds is sufficient to support termination. In re Taylor, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." In re D.J.D., D.M.D., S.J.D., J.M.D., 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005) .
Here, the trial court concluded that D.J.C. was a neglected juvenile. "Neglected juvenile" is defined in N.C. Gen. Stat. § 7B-101(15) (2007) as:
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
Even assuming arguendo that Respondent had remedied the conditions of her home, there were still sufficient findings of fact to support the trial court's conclusion that D.J.C. was a neglected juvenile.
First, the trial court made the following findings of fact: that Respondent absconded with D.J.C., and that law enforcement's assistance was required to retrieve the child from Respondent; that when the social worker located the child, the child was "extremely dirty"; that Respondent offered no explanation for absconding with D.J.C.; and that "[Respondent's] behavior on this occasion reflects her inability to make progress to the satisfaction of the court because it demonstrates her complete disregard for the care of her child."
Second, the trial court made multiple findings of fact regarding Respondent's lack of stability. Foremost, the trial court found that as of August 2007, Respondent had "resided in at least ten different homes over a period of twenty months." The trial court recounted Respondent's residential history from the filing of the petition alleging neglect through the date of the termination hearing. Additionally the trial court found that: Respondent's "explanation for living in multiple locations was that the persons she resided with would ultimately not work out or they would part their ways.; Respondent had "limited income and this caused difficulty with obtaining permanent housing"; and Respondent's "choices of residence were not homes in which the child could be placed or even visit unsupervised." Further, the trial court found as fact:
53. That the [Respondent] contends she has been unable to obtain employment and housing based upon her inability to work due to several medical conditions. However, the mother failed to offer any evidence as to her actual medical conditions; mother did not present any evidence that she was or has been medically determined unable to work nor did she present any actual social security applications or evidence of denied employment.
Finally, the trial court found that Respondent's lack of stability had "persisted over two and [a] half years" and was "clear, cogent and convincing evidence of continual and repeated neglect. There is a probability that the mother's continual lack of stability is evidence of her inability to provide a permanent and safe home for the juvenile."
Respondent challenges findings of fact number 5, 9, 10, and 11 relating to her failure to establish a safe and appropriate home for D.J.C. However, Respondent does not challenge the findings made by the trial court relating to her behavior and instability. Therefore, these findings of fact are supported by sufficient evidence, and are binding on appeal. N.C.R. App. P. 28(b)(6); see also In re P.M., 169 N.C. App. 423, 424, 610 S.E.2d 403, 404-05 (2005) (concluding respondent had abandoned factual assignments of error when she "failed to specifically argue in her brief that they were unsupported by evidence"). The trial court's uncontested findings of fact regarding Respondent's behavior and instability support the trial court's conclusion that Respondent neglected D.J.C., and that there was a likelihood that neglect would persist should D.J.C. be returned to Respondent's care. Accordingly, we conclude as a matter of law that sufficient grounds existed for termination of Respondent's parental rights under N.C. Gen. Stat. § 7B-1111(a)(1).
We next consider whether the trial court erred in concluding that it was in the best interests of the juvenile to terminate Respondent's parental rights. We conclude that the trial court did not err.
"The trial court has discretion, if it finds that at least one of the statutory grounds exists, to terminate parental rights upon a finding that it would be in the [juvenile's] best interests." In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001). Factors to consider in determining the juvenile's best interests include: (1) the age of the juvenile; (2) the likelihood of adoption; (3) the impact on the accomplishment of the permanent plan; (4) the bond between the juvenile and the parent; (5) the relationship between the juvenile and a proposed adoptive parent or other permanent placement; and (6) any other relevant consideration. N.C. Gen. Stat. § 7B-1110(a)(2007). The trial court is to take action "which is in the best interests of the juvenile" when "the interests of the juvenile and those of the juvenile's parents or other persons are in conflict." N.C. Gen. Stat. § 7B-1100(3)(2007). The trial court's disposition order will not be disturbed unless it could not have been the product of reasoning. In re J.B., 172 N.C. App. 747, 751, 616 S.E.2d 385, 387, aff'd, 360 N.C. 165, 622 S.E.2d 495 (2005).
In the case before us, the trial court's detailed findings of fact reveal that the trial court considered the factors required by G.S. § 7B-1110(a). The trial court found as fact:
59. The [Respondent] is bonded with the child.
. . . .
65. That the foster parents . . . are very bonded to the child; the child has done well in their care and progressed well in her development.
66. That [the foster parents] considered adopting the child but have decided not to adopt the child.
67. That [the foster mother] testified and the court finds persuasive that due to her age and the child's age that it would be in the child's best interest if she could be adopted by a younger family.
. . . .
72. That the permanent plan for the juvenile is adoption and this plan is achievable based upon the age of the child. The child is only [] [sic] years of age. The child is a friendly happy child. The child is extremely bright and intelligent. The child is in good physical health.
73. The adoption will establish permanence for the child after a two year period in which the [Respondent] has failed to establish a permanent home.
74. That the child has no severe mental or developmental disabilities.
75. The [DSS] currently has eight families who are interested in adopting a child like D.J.C.
76. That [the foster mom] is willing to keep the child in her home and work with any adoptive family in the transition process for the child. This will establish a safe and healthy process for the child.
For the foregoing reasons, we affirm the trial court's termination of Respondent's parental rights.
Affirmed.
Judges HUNTER, JR. and ERVIN concur.
Report per Rule 30(e).
NOTES
[1] To protect their privacy, some parties are referred to by their initials in this opinion.