IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-198

Filed: 17 October 2017

Rockingham County, No. 14 JT 182-84

IN THE MATTER OF: E.B., M.B., A.B.

Appeal by respondent-father from orders entered 22 November 2016 by Judge Frederick Wilkins in Rockingham County District Court. Heard in the Court of Appeals 10 August 2017.

*Beverley A. Smith, for Petitioner-Appellee Rockingham County Department of Social Services.*

*Lauren Golden, for guardian ad litem.*

*Peter Wood, for Respondent-Appellant father.*

MURPHY, Judge.

"Harvey"[1] the father of juveniles E.B., M.B., and A.B. ("Ernie," "Molly," and "Annie,"[2]), appeals from an order terminating his parental rights. The trial court declared that Harvey had willfully abandoned his children and that he made no reasonable progress on the case plan, thus rendering them neglected. After careful review, we reverse and remand for additional findings of fact and conclusions of law.

## **Background**

---

[1] The father will be referred to by a pseudonym to protect the identities of the children.

[2] The children will be referred to by pseudonyms to protect their identities. E.B. is "Ernie," M.B. is "Molly," and A.B. is "Annie."

On 10 December 2014, the Rockingham County Department of Social Services ("DSS") filed a petition alleging that Ernie, Molly, and Annie were neglected and dependent juveniles due to "severe and ongoing domestic violence" in their home. DSS stated that the family came to its attention after Harvey assaulted a child who was in his home. That child, who is not one of the juveniles who is the subject of this action, entered DSS's care and informed DSS that there was domestic violence in Harvey's home. DSS learned that on 5 June 2013, Ernie was injured when his mother ("Gert"[3]) threw a metal cup which hit Ernie in the face. Harvey and Gert gave differing stories as to whether Gert intended to throw the cup at Eddie or at Harvey. Harvey's family was referred for in-home services.

On 8 December 2014, a social worker went to Harvey's home for a scheduled visit to provide services. During a check of the home, the DSS worker heard an altercation taking place inside of the home and decided to call the police. On arrival, the social worker observed a lamp, and then wooden pieces from a broken table thrown from a window in the residence. The social worker called the police. Harvey and Gert later acknowledged to the social worker that they had been in an altercation. All three juveniles were present during the incident. Harvey and the juveniles were transported to the paternal grandmother's home with, according to DSS, "the

---

[3] Gert will be referred to by a pseudonym in order to protect the identities of the children.

understanding that they were to remain there for the time being while new arrangements were made to address the ongoing domestic violence."

On 10 December 2014, DSS social worker Jordan Houchins went to the residence to discuss the 8 December 2014 incident with Gert. The social worker found their home in ruins. There were multiple holes in walls in the residence; all of the tables in the house had been destroyed; and there were broken dishes on the floor of the juveniles' bedrooms. These conditions resulted from numerous domestic violence incidences. Gert told the social worker that she and Harvey had hit each other during these altercations. Gert, however, refused to seek a domestic violence protection order and did not want to go to a shelter. When the social worker examined the juveniles' bedrooms, she found Harvey hiding under a blanket in one of the beds. Harvey claimed to be sleeping, and denied that he was hiding from the social worker. He became belligerent when confronted by the social worker. The social worker attempted to assume emergency custody of the children. Harvey then picked up Molly, an infant, and left the residence. Molly was not appropriately dressed as she was wearing only a "onesie" and it was a "bitterly cold morning." Law enforcement subsequently located Harvey and Molly several blocks from the residence. DSS subsequently obtained non-secure custody of all the juveniles.

On 10 November 2015, the trial court adjudicated the juveniles to be neglected and dependent after Harvey and Gert admitted to the altercations alleged in the

petition. The trial court ordered Harvey to comply with a case plan, which included: (1) complete a domestic violence offender treatment/education and counseling; (2) complete an approved parenting class; (3) submit to a mental health assessment and comply with all recommendations; (4) obtain and maintain suitable housing for the juveniles; (5) obtain employment with income sufficient to provide for the basic needs of the juveniles; and (6) obtain transportation sufficient to provide for Harvey's and the juveniles' basic needs.

The trial court initially ordered a permanent plan of reunification for the juveniles. The trial court later changed the primary permanent plan to adoption because Harvey and Gert "continue[d] to engage in domestic violence." The secondary plan remained reunification. On 28 September 2016, DSS filed a petition to terminate Harvey's and Gert's parental rights pursuant to N.C.G.S. § 7b-1111(a)(1) (neglect) and (2) (failure to make reasonable progress) (2015).

## Analysis

N.C.G.S. § 7B-1111 sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support termination. *In re Taylor*, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." *In re D.J.D.*, 171 N.C. App. 230, 238, 615 S.E.2d 26,

32 (2005) (citing *In re Huff*, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), *appeal dismissed, disc. review denied*, 353 N.C. 374, 547 S.E.2d 9 (2001)). We review the trial court's conclusions of law de novo. *In re S.N.*, 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), *aff'd per curiam*, 363 N.C. 368, 677 S.E.2d 455 (2009).

In the instant case, the trial court concluded that grounds existed to terminate Harvey's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) and (2). First, regarding N.C.G.S. § 7B-1111(a)(1), where termination is based on neglect, our General Statutes define a "[n]eglected juvenile" as:

> [a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; . . . or who has been placed for care or adoption in violation of law.

N.C.G.S. § 7B-101(15) (2015). Generally, "[i]n deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child at the time of the termination proceeding." *In re L.O.K.*, 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (citations and quotations omitted).

Second, to terminate a parent's rights under N.C.G.S. § 7B-1111(a)(2), the trial court must perform a two-part analysis. The trial court must determine by clear, cogent and convincing evidence that: (1) a child has been willfully left by the parent

in foster care or placement outside the home for over twelve months; and (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child. *In re O.C.*, 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396 (2005) (internal citations omitted), *disc. review denied*, 360 N.C. 64, 623 S.E.2d 587 (2005).

Here, in support of its conclusion that grounds existed pursuant to N.C.G.S § 7B-1111(a)(1) and (2) to terminate Harvey's parental rights, the trial court found as fact:

> 7. The minor children were adjudicated to be neglected and dependent juveniles on February 5 2015 . . . .
> . . . .
> 12. Both parents entered counseling at Hope Services in February and March of 2016 following an incident of domestic violence in January of 2016.
> 13. After attending weekly sessions of counseling at Hope Services, another incident of domestic violence occurred on July 5, 2016.
> 14. All three minor children were placed in the nonsecure custody of the Department due to severe domestic violence between the parents. The domestic violence was also a finding of fact in the adjudication order from February of 2015.

Based on these findings, the trial court concluded:

> 17. The respondent-father . . . neglected the juveniles within the meaning of N.C.G.S. §§ 7B-101 and 7B-1111(a)(1), in that: The minor children were adjudicated neglected and dependent on February 5, 2015 based on their exposure to domestic violence by the respondent parents. *There is no evidence of changed circumstances*

*related to the respondent as he continues to engage in domestic violence with the respondent-mother.* It is likely that the respondent-father's neglect would be repeated in the future if the children were returned to his care.

18. Pursuant to N.C.G.S. § 7B-1111(a)(2), the respondent-father . . . left the minor children in foster care placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. The children have been placed in foster care since December 10, 2014, and *the respondent-father has not taken corrective action to alleviate those conditions that led to the children's removal as there is the continuation of domestic violence between the respondent parents.*

(Emphasis added).

Harvey contends that the trial court's findings concerning domestic violence were insufficient to support the court's conclusions of law. We agree.

Our Supreme Court has stated:

Effective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated. Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each . . . link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.

*Coble v. Coble*, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980).

Here, it is apparent from the court's conclusions of law 17 and 18 that the sole basis for termination of Harvey's parental rights was the alleged continuation of domestic violence between Harvey and Gert. However, the only findings made by the trial court concerning continuing incidents of domestic violence were findings 12 and 13, in which the court merely found that the "incident[s]" of domestic violence "occurred" in January and July of 2016. The trial court's succinct findings shed little light on the circumstances of the domestic violence, its severity, or the impact on the juveniles. Most importantly, entirely absent from the findings are facts showing Harvey was engaged in the domestic violence incident involving Gert. Instead, the evidence clearly demonstrated that Gert was the aggressor and was the only one involved in domestic violence. Thus, there is insufficient evidence to support the trial court's conclusion that Harvey continued to engage in domestic violence. We conclude that the trial court's vague findings regarding domestic violence lack the required specificity necessary "to enable an appellate court to review the decision and test the correctness of the judgment." *Quick v. Quick*, 305 N.C. 446, 451, 290 S.E.2d 653, 657 (1982); *see also In re Gleisner*, 141 N.C. App. 475, 481, 539 S.E.2d 362, 366 (2000) (the trial court's "vague and apparently inaccurate" finding of fact could not be used as a basis for the trial court's determination that the juvenile was neglected because it "impedes our ability to determine whether the trial court's conclusions are supported by the findings.").

Consequently, we hold the trial court's findings do not support the trial court's determination that there was a continuation of domestic violence, as well as its conclusion that grounds existed to terminate Harvey's parental rights based on neglect and willful failure to correct the conditions which led to the juveniles' removal from Harvey's care.

However, there remains an issue concerning Harvey's living situation. As was found during the original adjudication of neglect of the children, Harvey appears to live with Gert. The trial court terminated her parental rights, but she did not appeal that order. On remand, the trial court must make additional findings of fact and conclusions of law concerning where the children will live if they are to return to Harvey's care. It should inquire into the effect that living with Gert will have on the children, including the possibility of future domestic violence. Accordingly, we reverse the trial court's order terminating Harvey's parental rights and remand for further findings of fact.

REVERSED AND REMANDED.

Judge BRYANT concurs in the result only.

Judge HUNTER, JR. concurs in a separate opinion.

No. COA17-198 – *In re: E.B., M.B., A.B.*

HUNTER, JR., Robert N., Judge, concurring in separate opinion.

I concur with the majority opinion. The trial court's findings do not support the conclusion that grounds existed to terminate the father's parental rights. The trial court seems to base this conclusion on two incidents of domestic violence which occurred in 2016. However, as a result of these incidents the mother was charged with assault and resisting an officer. There is nothing in the record indicating the role, if any, the father played in these incidents.

Furthermore, there is evidence in the record tending to show the father has made progress on his case plan. Specifically, he completed a parenting class, submitted to a mental health assessment, obtained employment as a truck driver, obtained and maintained transportation, and obtained stable housing. He has complied with the child support order and interacted appropriately with the children during visits, in addition to attending weekly domestic violence counseling services.

On remand the trial court needs to address these issues to determine whether this and other evidence support a finding that the father did or did not make sufficient progress on his case plan during the time the children were in the custody of the Department of Social Services. I would leave to the trial court the decision whether or not to take additional evidence on remand.