IN THE MATTER OF: A.J.M.P.

No. COA09-1609

(Filed 6 July 2010)

**1. Termination of Parental Rights— grounds—neglect**

The trial court did not err by concluding that grounds existed based on neglect under N.C.G.S. § 7B-1111(a)(1) to terminate respondent father's parental rights. Respondent's other grounds assigned as error did not need to be addressed based on the upholding of the trial court's findings and conclusion regarding neglect.

**2. Termination of Parental Rights— best interest of child— statutory factors**

The trial court did not abuse its discretion by concluding that it would be in the child's best interest to terminate respondent father's parental rights based on the trial court's consideration of the factors required by N.C.G.S. § 7B-1110(a). Respondent father admitted that he had not written letters or sent gifts to the minor child throughout the term of his imprisonment, nor had he

financially supported the child since the child's parents divorced in 2004.

Appeal by respondent-father from orders entered 28 September 2009 by Judge Albert A. Corbett, Jr., in Harnett County District Court. Heard in the Court of Appeals 28 April 2010.

*Charlene Edwards for petitioner-mother appellee.*

*Richard Croutharmel for respondent-father appellant.*

HUNTER, JR., Robert N., Judge.

Respondent-father appeals from an order terminating his parental rights to A.J.M.P. ("Abraham").[1] On appeal, respondent-father challenges the trial court's conclusion that grounds existed to terminate his parental rights based on the following contentions: (1) Abraham does not meet the definition of a "dependent" child under N.C. Gen. Stat. § 7B-101(a)(9) (2009); (2) respondent-father has tried to maintain contact with his child despite respondent-father's incarceration and petitioner-mother's refusal to allow him to communicate with Abraham; (3) respondent-father has not failed to provide child support pursuant to N.C. Gen. Stat. § 7B-1111(a)(4) (2009) because petitioner-mother did not prove that there was an existing child support order by clear, cogent, and convincing evidence; (4) petitioner-mother failed to prove that respondent-father neglected Abraham. In addition, respondent-father asserts that the trial court abused its discretion by continuing to the disposition stage and determining that termination of his parental rights was in the best interest of Abraham.

For the reasons stated herein, we conclude that the trial court's findings of fact are supported by clear, cogent, and convincing evidence, and that the findings of fact support the trial court's conclusion that respondent-father neglected Abraham. We further conclude that the trial court did not abuse its discretion in concluding that termination of respondent-father's parental rights would be in the best interest of Abraham. Accordingly, we affirm the decision of the trial court.

## I. FACTUAL BACKGROUND

Abraham was born to petitioner-mother and respondent-father on 14 March 2001. Petitioner and respondent married on 28 March 2002;

---

1. The juvenile's name has been changed to protect his identity.

**IN RE A.J.M.P.**

[205 N.C. App. 144 (2010)]

however, the couple separated on 4 April 2003, and were later divorced on 2 August 2004. On 15 April 2004, petitioner-mother initiated a child custody action pursuant to Chapter 50 of the North Carolina General Statutes. The district court awarded custody of Abraham to petitioner-mother, and respondent-father was awarded visitation.

In 2005, respondent-father was deployed to Afghanistan while working as a civilian contractor with the C.I.A. There, he was arrested by federal authorities on charges involving abuse of a prisoner of war which resulted in the death of the prisoner. Respondent-father was incarcerated in the Wake County Jail as a federal pre-trial detainee from June 2005 until approximately March 2006 when he was granted pre-trial release. Respondent-father did not see Abraham and had limited telephone contact with the child while he was incarcerated.

After respondent-father was granted pre-trial release, petitioner-mother secured an *ex parte* order suspending respondent-father's visitation until the matter could be heard by the trial court. On 27 March 2006, the trial court modified the parties' previous visitation arrangement, limiting respondent-father's visitation with Abraham to two-hour increments. Respondent-father visited with Abraham under the terms of the agreement once on 4 April 2006. Further visitation by respondent-father was eliminated because he was arrested and placed in the Harnett County Jail for assaulting his girlfriend at the time. At the time of his arrest, approximately $8,000 was found in respondent-father's vehicle. As a result of this arrest, respondent-father's pre-trial release was revoked, and on 22 May 2006, the trial court entered an order ceasing respondent-father's visitation with Abraham. Respondent-father was subsequently convicted and received an active sentence for the federal charge involving the death of the prisoner in Afghanistan. His projected release date is July 2012. Abraham was five years old at the time of respondent-father's incarceration and he will be eleven years old upon respondent-father's release.

While respondent-father has been in prison, petitioner-mother and her husband, M.L., have been caring for Abraham. Petitioner-mother and M.L. are both actively involved with Abraham's school and his extracurricular activities, including: baseball, Boy Scouts, and the Boy Scout Derby. Abraham also attends Calvary Baptist Church with petitioner-mother, M.L., and M.L.'s fourteen-year-old daughter. M.L. has stated that he desires to adopt Abraham. Respondent-father has not seen Abraham since his last visit on 4 April 2006.

**IN RE A.J.M.P.**

[205 N.C. App. 144 (2010)]

On December 2006, petitioner-mother filed a termination of parental rights petition alleging four grounds for termination, including: (1) N.C. Gen. Stat. § 7B-1111(a)(1) (neglect); (2) N.C. Gen. Stat. § 7B-1111(a)(3) (failure to pay support); (3) N.C. Gen. Stat. § 7B-1111(a)(6) (dependency); and (4) N.C. Gen. Stat. § 7B-1111(a)(7) (abandonment). In assessing petitioner-mother's termination of parental rights, the trial court appointed a guardian ad litem ("GAL") for Abraham.

The GAL visited Abraham on 9 May 2007 and 25 January 2008. During the visits the GAL spoke with, among others, petitioner-mother, M.L.'s daughter, and Roberta Keithley ("Keithley")—respondent-father's friend. The GAL recommended that respondent-father's parental rights be terminated so that M.L. could adopt Abraham. The GAL asserts the following facts as the basis for the GAL's recommendation: (1) the respondent-father has not seen the child for five years and has not provided any meaningful support, financial or otherwise; (2) respondent-father is incarcerated for a crime of violence that he chose to commit; and (3) adoption by M.L. would give Abraham the stability he needs. The GAL submitted a report on the best interests of Abraham at the termination of parental rights hearing on 25 August 2009. In addition to the GAL's findings, the report included a letter from Keithley to the GAL and a letter from respondent-father dated 27 October 2008.

Petitioner-mother filed her proper termination of parental rights petition in February 2008. Respondent-father filed a *pro se* answer on 21 July 2008 denying petitioner-mother's material allegations. In November 2008, respondent-father wrote a letter to the clerk of court and attached four motions: (1) motion for appointment of counsel; (2) motion for extension of time; (3) motion to participate in the termination of parental rights hearing via telephone; and (4) motion that the petitioner-mother be held in contempt for denying him access to Abraham. On 26 November 2008, the trial court appointed counsel to represent respondent-father at the termination of parental rights hearing. The termination hearing was held in special session on 25 August 2009.

At the beginning of the hearing, respondent-father made four motions to dismiss on various grounds. All four motions were denied. Petitioner-mother presented all of her evidence, which detailed the facts presented above and included testimony from respondent-father. At the close of petitioner-mother's evidence, respondent-father

IN RE A.J.M.P.

[205 N.C. App. 144 (2010)]

made a motion to dismiss for insufficiency of the evidence. The court denied that motion.

To refute petitioner-mother's evidence, respondent-father also testified in his own defense; however, his testimony was solely limited to rebuttal of the petitioner-mother's testimony. At the close of all evidence, respondent-father made another motion to dismiss which was denied by the trial court.

On 28 September 2009, the trial court issued an order that it was in the best interests of Abraham that respondent-father's parental rights be terminated. Respondent-father filed notice of appeal on 25 August 2009.

On appeal, respondent-father challenges the trial court's conclusion that grounds exist to terminate his parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a) (2009). Respondent-father also contends, largely based on his first argument, that the trial court abused its discretion by continuing to the disposition stage and determining pursuant to N.C. Gen. Stat. § 7B-1110(a) (2009) that termination of his parental rights was in the best interest of Abraham.

## II. INSUFFICIENT GROUNDS FOR TERMINATING PARENTAL RIGHTS

[1] Respondent-father asserts that the trial court erred by concluding that grounds existed to terminate his parental rights. Based on the record before us, we disagree with respondent-father and affirm the trial court.

N.C. Gen. Stat. § 7B-1111(a) sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support a termination. *In re Taylor*, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." *In re D.J.D.*, 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005) (citing *In re Huff*, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000)).

The trial court concluded that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (neglect), (4) (willful failure to pay for care and support), (6) (failure to provide proper care and supervision), and (7) (willful abandonment) to terminate respondent-father's parental rights. We first address the court's conclusion that respondent-father neglected Abraham.

**IN RE A.J.M.P.**

[205 N.C. App. 144 (2010)]

According to N.C. Gen. Stat. § 7B-1111(a)(1), a court may terminate one's parental rights where:

The parent has abused or neglected the juvenile. The juvenile shall be deemed to be abused or neglected if the court finds the juvenile to be an abused juvenile within the meaning of G.S. 7B-101 or a neglected juvenile within the meaning of G.S. 7B-101.

"Neglect" is statutorily defined, in pertinent part, as follows:

Neglected juvenile.—A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C.G.S. § 7B-101(15) (2009). In determining whether neglect has occurred, "the trial judge may consider . . . a parent's complete failure to provide the personal contact, love, and affection that [exists] in the parental relationship." *In re Apa*, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982). "Incarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision." *In re Yocum*, 158 N.C. App. 198, 207-08, 580 S.E.2d 399, 405 (2003).

In the present case, the trial court made the following findings of fact in support of its conclusion that respondent-father neglected Abraham:

31. Respondent was incarcerated in the Wake County Jail as a Federal Pre-Trial detainee from June 2005 until approximately March 2006.

32. During this time of his incarceration, the Respondent had not seen the minor child and he had engaged in limited telephone contact with the minor child.

33. Upon the Respondent's pre-trial release from federal custody in March 2006 the Petitioner secured an ex parte order suspending the respondent's visitation until the matter was heard by the court.

. . . .

36. Respondent exercised [his] first visit and, before he could exercise the second visitation[,] . . . the respondent was

**IN RE A.J.M.P.**

[205 N.C. App. 144 (2010)]

arrested for assault on a female concerning his at the time li[v]e-in-girlfriend and was placed in the Harnett County Jail.

. . . .

39. On May 22, 2006, The Honorable Jacqueline L. Lee, District Court Judge presiding over Harnett County Domestic Relations Court entered an order ceasing the Respondent's visitation with the minor child until further orders of the Court.

40. Nothing was filed by the Respondent . . . [regarding the court ordered cease of visitation] from May 22, 2006 until July 2008 after the termination of parental rights action was filed . . . .

. . . .

47. Respondent has had funds available to him and has had and continues to have an ability to pay support for the minor child and has failed to do so.

48. Respondent has never paid any child support to the petitioner for the use and benefit of the minor child; neither while he was employed, nor when he was initially incarcerated, nor while he has been in the federal prison system earning income. . . .

. . . .

49. During all of the time that the Respondent has been incarcerated he has not written any letters to the minor child, nor has he sent any cards.

. . . .

52. Respondent has not sent any gifts or packages or items to the minor child. He did in 2007 register the minor child to receive a gift from an Angel Tree program for children with incarcerated fathers.

55. Respondent only made one telephone call to the minor child between June 2005 and February 2006.

56. Respondent has not been a part of the minor child's school or extracurricular activities nor has he written the minor child to inquire about such subjects or any other matter.

57. Respondent has not provided the juvenile with proper care supervision or discipline.

58. Respondent has abandoned the juvenile by virtue of his criminal acts that led to his post and pre[-]trial incarcerations.

59. The Respondent's actions, as set forth herein above constitutes neglect of the minor child.

Respondent-father specifically disputes finding of fact number 55 in his brief and contends that he called Abraham at least four times between June 2005 and February 2006. He asserts that petitioner-mother's diary supports his contention, as it shows that petitioner-mother made entries providing that respondent-father called on the following dates: 8 July 2005, 6 August 2005, 5 September 2005, and 7 February 2006. In addition, respondent-father contends that he attempted to maintain contact with Abraham through Keithley by requesting that she call petitioner-mother on his behalf.

With regard to respondent-father's contentions, we note that respondent-father has been in prison for over half of Abraham's life. Respondent-father has had minimal contact with Abraham since his imprisonment, and has not actually seen the minor child since 4 April 2006. In 2007, respondent-father registered Abraham to receive a gift from the Angel Tree program for children with incarcerated fathers; however, aside from this program, respondent-father has not sent any gifts or packages to the minor child. Further, although there is evidence that respondent-father has attempted to contact Abraham by telephone and through intermediaries, he admittedly has not written any letters or sent cards to Abraham since his incarceration.

In addition, respondent-father admits that he has not provided financial support for Abraham since he and petitioner-mother divorced in 2004. In fact, the evidence showed, and the trial court found, that respondent-father has been assigned to work duty in the federal prison system since 2007 and that he has received funds from friends and family while in prison. Therefore, despite his ability to contribute to Abraham's well-being, respondent-father has not given any monetary support to the minor child. We hold that grounds for termination of respondent's parental rights under section 7B-1111(a)(1) were established by clear, cogent, and convincing evidence. As such, respondent-father's assignment of error is overruled.

Respondent-father also contends that the trial court erred by determining that grounds existed to terminate his parental rights pur-

IN RE A.J.M.P.

[205 N.C. App. 144 (2010)]

suant to N.C. Gen. Stat. § 7B-1111(a)(4) (willful failure to pay for care and support), (6) (failure to provide proper care and supervision), and (7) (willful abandonment).

With regard to respondent-father's remaining arguments, we note that petitioner-mother concedes that Abraham is not a "dependant" child pursuant to N.C. Gen. Stat. § 7B-101(a)(9), and further concedes that there was no judicial decree ordering respondent-father to pay child support to petitioner-mother as required by N.C. Gen. Stat. § 7B-1111(a)(4). Petitioner's concessions are not fatal on appeal, given that a trial court's finding of one ground for termination of parental rights is sufficient. *See In re Taylor,* 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). Moreover, because we have upheld the trial court's findings and conclusion regarding neglect, we need not address respondent-father's assignments of error contesting any other ground for termination.

## III. BEST INTEREST OF THE CHILD

**[2]** We next consider whether the trial court erred in concluding that it was in the best interests of the juvenile to terminate respondent-father's parental rights. Respondent-father bases his final argument on his contention that there are no grounds pursuant to N.C. Gen. Stat. § 7B-1111(a) to terminate his parental rights and on an argument that petitioner-mother intentionally thwarted his attempts to maintain a relationship with Abraham. Based on our holding above, and after further review of the record, including the trial court's order and briefs and contentions of the parties, we affirm the trial court.

"The trial court has discretion, if it finds that at least one of the statutory grounds exists, to terminate parental rights upon a finding that it would be in the [juvenile's] best interests." *In re Nesbitt,* 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001). Factors to consider in determining the juvenile's best interests include: (1) the age of the juvenile; (2) the likelihood of adoption; (3) the impact on the accomplishment of the permanent plan; (4) the bond between the juvenile and the parent; (5) the relationship between the juvenile and a proposed adoptive parent or other permanent placement; and (6) any other relevant consideration. N.C. Gen. Stat. § 7B-1110(a) (2009). The court is to take action "which is in the best interests of the juvenile" when "the interests of the juvenile and those of the juvenile's parents or other persons are in conflict." N.C. Gen. Stat. § 7B-1100(3) (2005). As a discretionary decision, the trial court's disposition order will not be disturbed unless it could not have been the product of reasoning.

*In re J.B.,* 172 N.C. App. 747, 751, 616 S.E.2d 385, 387, *aff'd,* 360 N.C. 165, 622 S.E.2d 495 (2005).

Here, the trial court's 28 September 2009 order reveals that the trial court considered the factors required by N.C. Gen. Stat. § 7B-1110(a). In pertinent part, the trial court found:

63. The minor child resides with the Petitioner, her current husband [M.L.] and his daughter [] who is 13 years old.

64. Petitioner is a Veterinary Technician for ATS contracted at Ft. Bragg and has been so for ten years. Her yearly income is approximately $22,000 to 24,000.00 per year.

65. [M.L.] is a Pharmacy Technician at Ft. Bragg and has been for six years. His yearly income is approximately $72,000.00.

66. Petitioner and [M.L.] have resided together with the minor child [] at their current residence since October 2005.

. . . .

69. Petitioner and [M.L.] are both actively involved with the minor child's school. Additionally, they are both actively involved with the minor child's extracurricular activities such as baseball, Boy Scouts and the Boy Scout Derby, and they attend Calvary Baptist Church as a family.

70. The minor child gets along well with and has a close relationship with [M.L.'s] daughter [].

71. Petitioner and [M.L.] have been the sole source of parental care, support and guidance for the minor child. The Petitioner since the Respondent's first incarceration of June 2005 and [M.L] assisting the Petitioner since October 2005.

72. Petitioner is heavily involved with the minor child's school at Benhaven Elementary. She is on the School Improvement Team, has served as a proctor, attends awards ceremonies and back to school nights with the minor child.

73. [M.L.] is also active with the minor child's school.

74. Both Petitioner and [M.L.] are active with the minor child in cub scouts and boy scouts and the Pinewood derby and his recreational sports teams such as his baseball team.

**IN RE A.J.M.P.**

[205 N.C. App. 144 (2010)]

75. The Respondent has not been a part of the minor child's school or extracurricular activities nor has he written the minor child to inquire about these subjects.

76. The minor child [] is a well-adjusted, happy child.

77. The minor child [] calls [M.L.] dad.

78. [M.L.] is the adult male who is filling the role of father in the life of this minor child.

. . . .

80. [M.L.] wishes and desires to adopt [Abraham] who he already sees as his son.

81. The Guardian Ad Litem's recommendation was that the Respondent's rights be terminated so that [M.L.] could adopt the minor child because of the following facts:

   a. That the Respondent has not been a presence in the minor child's life for approximately five years. The minor child was five years old when he last saw the Respondent and is now nine;

   b. The Respondent is incarcerated for a crime of violence that he chose to commit;

   c. That the Respondent has not provided any meaningful support—financial or otherwise—to the minor child;

   d. Termination[] and adoption would give [the minor child] the stability he needs.

82. Petitioner has proven by clear, cogent and convincing evidence that it is in the best interests of the juvenile [] that the parental rights of the respondent[-father] be terminated.

Despite the trial court's lengthy findings of fact, respondent-father argues that the trial court's conclusion does not take into consideration petitioner-mother's attempts to thwart his bond with Abraham. Respondent-father's contention is based solely on his sparse attempts to contact Abraham through Keithley or by telephone. With regard to this argument, we also note that, although respondent-father has not seen Abraham since 4 April 2006, the cessation of visitation was ordered by the district court in the custody case. Respondent-father has not challenged the district court's order, and the petitioner-mother was acting in accordance with that order.

**IN RE L.I.**

[205 N.C. App. 155 (2010)]

Moreover, to date, respondent-father admittedly has not written letters or sent gifts to the minor child throughout the term of his imprisonment. In addition, respondent-father admits that he has not financially supported Abraham since he and petitioner-mother divorced in 2004. We conclude that respondent-father's own actions thwarted the bond between himself and the minor child, and as such, his argument on this issue is without merit.

Based on the trial court's findings of fact and the record, we hold that the trial court did not abuse its discretion in terminating respondent-father's parental rights. *See In re Humphrey*, 156 N.C. App. 533, 577 S.E.2d 421 (2003) (upholding termination order where evidence showed the mother failed to contact her child for a significant period and had withheld her love, care, and affection from the child).

We affirm the trial court's order terminating respondent-father's parental rights to his child.

Affirmed.

Judges McGEE and STROUD concur.