DILLON, Judge.
Mother appeals from an order terminating her parental rights to her minor children, "Andy" and "Hayden."[1] The order also terminates the rights of the children's father, who is not a party to this appeal. Because the trial court properly considered the dispositional factors in N.C. Gen. Stat. § 7B-1110(a) (2015) and did not otherwise abuse its discretion in determining the children's best interests, we affirm.
I. Background
In September 2015, Mecklenburg County Youth and Family Services ("YFS") removed one-month-old Andy and seven-year-old Hayden from Mother's care and filed a juvenile petition alleging neglect and dependency. See N.C. Gen. Stat. § 7B-101(9), (15) (2015). The petition alleged that YFS had been involved with the family since August 2014, primarily to address Mother's chronic homelessness and Father's lack of appropriate housing for the children. It further cited an incident of domestic violence ("DV") between the parents in the children's presence in August 2015.
In February 2016, the trial court adjudicated the children neglected and dependent. In its dispositional order, the trial court found that Mother was living with Father in his parents' home, which was "not suitable for any child[.]" Mother had acknowledged her "DV relationship with the father" and had attended her visitations in October, November, and December 2015 "with black eyes and scratches to her face[.]" The trial court found that Hayden was receiving "trauma-focused therap[y]," having been hospitalized for severe behavioral problems.
Addressing the barriers to reunification, the trial court found the parents' "problems include but are not necessarily limited to DV, inappropriate housing, and chronic homelessness." It ordered Mother and Father to comply with their YFS Family Services Agreement ("FSA") and advised them as follows:
Both parents need to comply if reunification is going to occur and the parents are going to remain together. The father shall get himself clean and make the necessary emotional changes to cease his DV behaviors. The parents will not reunify with the juveniles if the DV continues.
The court authorized YFS to suspend Mother's supervised visitation with Hayden "[i]f she appears under the influence or battered[.]"
After another DV episode with Father, Mother made some initial progress in complying with her FSA: she obtained a DV protective order against Father and began residential substance abuse treatment at CASCADE. Father refused to engage in services and was convicted of assaulting Mother, resulting in a period of incarceration followed by probation.
In July 2016, however, Mother began seeing Father again and eventually moved back in with him. She left CASCADE and "had a relapse of abuse of alcohol which resulted in her going to the hospital where she stopped breathing, where her life was in danger." Following a permanency planning review hearing, the trial court changed the primary permanent plan for the children from reunification to adoption and directed YFS to pursue termination of parental rights ("TPR").
In November 2016, YFS filed a TPR motion and filed an amended motion eight days later. In early 2017, the trial court held a hearing on the motion over three days and entered its TPR order. In its order, the court adjudicated grounds to terminate the parental rights of Mother and Father for neglecting the children, for failing to make reasonable progress to correct the conditions that led YFS to take custody of the children in September 2015, and for failing to pay a reasonable portion of the children's cost of care.[2] N.C. Gen. Stat. § 7B-1111(a)(1)-(3) (2015). The court further concluded that TPR was in the best interest of each child. Mother appealed.
II. Analysis
On appeal, Mother does not challenge the trial court's conclusion that grounds exist to terminate her parental rights under N.C. Gen. Stat. § 7B-1111(a). Rather, she claims the trial court abused its discretion in choosing TPR as the appropriate disposition for Andy and Hayden under N.C. Gen. Stat. § 7B-1110(a). She notes that the children were not in an adoptive placement at the time of the termination hearing and that Hayden's ongoing behavior difficulties make him less likely to be adopted than Andy, creating the risk that the brothers would be separated in order to facilitate Andy's adoption. Furthermore, given Hayden's strong attachment to her, Mother contends it is contrary to his best interest "[t]o suddenly terminate all visitation and contact between [them]."
"After an adjudication that one or more grounds for terminating a parent's rights exist" under N.C. Gen. Stat. § 7B-1111(a), the trial court must "determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a). The court must consider the following factors in making its determination:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
Id . Dispositional findings of fact are binding on appeal if they are supported by any competent evidence, see In re C.M ., 183 N.C. App. 207, 212, 644 S.E.2d 588, 593 (2007), or are not specifically challenged by the respondent-parent, see Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). "As a discretionary decision, the trial court's disposition [under N.C. Gen. Stat. § 7B-1110(a) ] will not be disturbed unless it could not have been the product of reasoning." In re A.J.M.P. , 205 N.C. App. 144, 152, 695 S.E.2d 156, 161 (2010).
The trial court's dispositional findings reflect its thoughtful assessment of Mother's prospects of providing a safe and stable home for her children, as follows:
8. [Mother] and [Father] have been in a thirteen-year domestic violence relationship. [Mother] professes she loves him and would find it difficult to be alone.
....
11. [Mother] was receiving a myriad of services from Cascade. ... However, she decided to leave and return to [Father] despite all of the support she was being provided.
....
13. ... [Mother] has not taken any action to increase her job skills and does not have an employment history.
14. [Father] has done nothing on his case plan. ... He is a violent man with major substance abuse issues. He assaults and controls women. [Hayden] is afraid of him. [Father] has physically assaulted his own parents when intoxicated. He is frequently intoxicated.
15. In the first four to five months of this case, [Mother] remained in a relationship with [Father] and she was assaulted numerous times.
16. [Mother] has tried to put herself in a position to have her children returned to her but has failed. [Father] still controls her. The Court does not believe she will ever be free of him. When she got really close to getting the children returned, she ran back to him.
17. [Mother] got pregnant with [Father] again, she wanted to get pregnant and still loves him. The Court knows that [Mother] wishes that [Father] will get clean and sober; he will not. He will continue to abuse women-continue to abuse her and she can't separate herself from him.
18. The children would be at extreme risk if returned to [Father's] care, or [Mother's] care. The risk follows her as long as she is with him and the children would not be safe with her.
Moreover, although Mother had re-enrolled in CASCADE and maintained several months of sobriety at the time of the termination hearing, the court found that she "has not successfully completed substance abuse treatment," "does not have stable housing or income sufficient to care for the children," and "is going the bare minimum at C[ASCADE]." Mother does not contest these findings, and accordingly, we are bound by them. See Koufman , 330 N.C. at 97, 408 S.E.2d at 731.
Additional uncontested findings address each of the dispositional criteria in N.C. Gen. Stat. § 7B-1110(a)(1)-(5) :
3. The children are together in the same foster care placement. [They] do well together in the home. The placement is not a prospective adoptive placement. [Hayden] is nine years of age; [Andy] is 18 months of age.
4. [Hayden] is involved in intensive therapy ... and is doing better. He started out in foster care with violent aggressive behaviors that occurred daily. They now occur monthly; he still gets in trouble in school but can sit still longer without incident.
5. When [Hayden] first came into care, he yelled, cursed and used inappropriate racial slurs. Now, he can discuss his outbursts after they occur. He could not do that before.
....
7. [Hayden] is afraid of [Father].
....
10. [Hayden] has a close bond with his mother and wants to be with her. [Andy] has a bond with his mother; his bond it harder to [gauge] due to his age.
....
3. The likelihood of adoption is high and [TPR] will aid in the accomplishment of the permanent plan of adoption. The only barrier to the children's adoption is [TPR]. [Hayden's] behaviors are a potential barrier, but he is improving.
The court made separate determinations that terminating Mother's parental rights was in the best interest of each child. Though acknowledging that TPR would sever the strong bond Hayden shared with his mother, the court found the risks posed to the child by Mother's relationship with Father were "so severe and so strong" as to outweigh this negative consequence. As quoted above, the trial court's findings account for each of the concerns raised by Mother regarding Hayden's well-being and prospects for adoption.[3] Manifestly, the court's decision to terminate Mother's parental rights is the product of reasoned evaluation of the facts in evidence. We note that the trial court's best interest determination accords with the opinion of the children's guardian ad litem, who also recommended TPR. Therefore, we find no abuse of discretion under N.C. Gen. Stat. § 7B-1110(a).
AFFIRMED.
Report per Rule 30(e).
Judges HUNTER, JR. and MURPHY concur.

Pseudonyms are used to protect the identity of the juveniles. See N.C. R. App. P. 3.1(b).

The court found insufficient evidence to establish grounds for termination based on dependency under N.C. Gen. Stat. § 7B-1111(a)(6) (2015).

At a review hearing held immediately after the conclusion of the TPR hearing, the court heard evidence that the children's paternal aunt "is interested in adopting both boys[.]"