An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1364

Filed: 6 October 2015

Wake County, No. 12 JT 299—302

IN THE MATTER OF: P.E.B., L.A.B., E.M.B., and J.N.B.

Appeal by respondent from orders entered 21 November 2013 and 4 September 2014 by Judge Monica M. Bousman in Wake County District Court. Heard in the Court of Appeals 24 August 2015.

> *Wake County Attorney's Office, by Deputy County Attorney Roger A. Askew, for petitioner-appellee.*
>
> *Jeffrey L. Miller for respondent-appellant father.*
>
> *Parker Poe Adams & Bernstein LLP, by Nicholas H. Lee, for guardian ad litem.*

BRYANT, Judge.

Where the juveniles in this action resided in North Carolina for six months prior to the commencement of the action, the lower court acquired jurisdiction over the juvenile matter. Where the unchallenged findings support the conclusion that reunification was futile or inconsistent with the juveniles' health, safety, or need for a permanent home, we affirm the trial court's efforts to cease reunifications. Where there was a sufficient basis to terminate respondent's parental rights separate and

apart from the circumstance of poverty, we affirm the trial court's termination of parental rights.

Respondent, the father of juveniles Peter, Lauren, Edgar, and Jack, appeals from orders ceasing reunification efforts and terminating his parental rights.

On 5 November 2012, Wake County Human Services ("WCHS") filed a petition alleging that Alicia[1] (then 16 years old), Peter (then 13 years old), Lauren (then 12 years old), Edgar (then 10 years old), and Jack[2] (then four years old) were abused, neglected and dependent juveniles. That same day the Wake County District Court issued a non-secure custody order for the children authorizing WCHS to provide temporary residential care. WCHS had received a report that respondent had choked Peter and banged Peter's head against a wall several times. The report further stated that the family had unstable housing and had moved three times from hotel to hotel within an 18 day period. Upon investigation, WCHS learned that the mother had left the children behind in North Carolina and was in Tennessee. Respondent and the juveniles continued to reside in a hotel, but there were safety concerns because respondent was leaving the children unattended overnight while he worked. The juveniles were placed with a paternal uncle, but he could not commit to providing care for the juveniles on a permanent basis. On 12 December 2012, the juveniles

---

[1] Alicia is a child of respondent's wife, but is not the child of respondent.
[2] Pseudonyms have been used to protect the identities of the juveniles.

were adjudicated neglected and dependent pursuant to a consent order. The court ordered and respondent agreed to a visitation plan, to obtain housing for himself and his children, to obtain legal employment sufficient to meet the needs of himself and his children, to complete a mental health assessment, to participate in parenting classes and demonstrate the skills he learns, and to maintain contact with his social worker at WCHS.

Almost a year later, on 21 November 2013, the trial court ceased reunification efforts and ordered that the permanent plan for Peter, Lauren, Edgar, and Jack was adoption. On 28 January 2014, WCHS moved to terminate respondent's parental rights to Peter, Lauren, Edgar, and Jack A hearing on the motion was held on 21 August 2014. In an order entered 4 September 2014, the trial court concluded that grounds existed to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), neglect, and (2), willfully leaving the juveniles in foster care for more than 12 months without showing reasonable progress in correcting those conditions which led to the removal of the juveniles. The trial court further concluded that it was in the best interest of the juveniles that respondent's parental rights be terminated. Accordingly, on 4 September 2014, the trial court terminated respondent's parental rights. Respondent appeals.

---

On appeal, respondent raises three issues: whether the lower court (I) had jurisdiction to enter an order terminating his parental rights; (II) erred in ceasing reunification efforts; and (III) erred in terminating respondent's parental rights.

*I*

Respondent first argues that the trial court erred in terminating his parental rights because it lacked subject matter jurisdiction. Respondent contends that the juveniles at issue resided in North Carolina less than six months prior to the commencement of the juvenile proceeding below. As such, the lower court failed to establish that North Carolina was the "home state" of the children and thus failed to acquire jurisdiction. We disagree.

"[T]he trial court's subject-matter jurisdiction may be challenged at any stage of the proceedings." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010) (citation omitted). "When a court decides a matter without the court's having jurisdiction, then the whole proceeding is null and void, *i.e.*, as if it had never happened." *Id.* (citation and quotations omitted). "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." *Id.*

North Carolina General Statutes, section 7B-1101 provides that a court "shall have jurisdiction to terminate the parental rights of any parent. Provided, that before exercising jurisdiction . . . the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201 [(Initial child-custody

- 4 -

jurisdiction)], 50A-203 [(Jurisdiction to modify determination)], or 50A-204 [(Temporary emergency jurisdiction)]." N.C. Gen. Stat. § 7B–1101 (2013).

Based upon the record before us, the trial court properly exercised subject matter jurisdiction. First, it is undisputed that there has been no prior custody determination in any other state. *See* N.C. Gen. Stat. § 50A-203 (2013) ("Jurisdiction to modify determination"). Second, the trial court did not exercise temporary emergency jurisdiction. *See* N.C. Gen. Stat. § 50A-204(a) (2013) ("Temporary emergency jurisdiction"). Therefore, in the instant case, the trial court could only exercise subject matter jurisdiction pursuant to N.C. General Statutes, section 50A-201 (Initial child-custody jurisdiction).

Pursuant to General Statutes, section 50A-201(a)(1), this State has jurisdiction to make an initial custody determination if it "is the home state of the child on the date of the commencement of the proceeding. . . ." N.C. Gen. Stat. § 50A-201(a)(1) (2013). A child's "[h]ome state" is defined as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child-custody proceeding." N.C. Gen. Stat. § 50A-102(7) (2013). In its 12 December 2012 consent order on adjudication, the trial court found as fact that the juveniles moved to North Carolina in April 2012. Respondent did not appeal the trial court's adjudication order. Therefore, he is bound by this finding of fact. *See In re Wheeler*, 87 N.C. App. 189, 194, 360 S.E.2d 458, 461 (1987) (holding that the doctrine

of collateral estoppel "operates to preclude parties from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination" (citation and quotations omitted)). Per the record, WCHS commenced the action by filing the petition alleging the juveniles abused, neglected, and dependent on 5 November 2012. Thus, based on the conclusive finding and the undisputed record, the juveniles were in North Carolina for more than six months prior to the filing of the initial petition. Accordingly, we hold that the trial court did have subject matter jurisdiction.

## II

Respondent next argues that the trial court erred by ceasing reunification efforts. Respondent argues that the evidence did not support the findings and the findings did not support the conclusion that reunification was futile or inconsistent with the juveniles' health, safety, or need for a permanent home. We are not persuaded.

"This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." *In re C.M.*, 183 N.C. App. 207, 213, 644 S.E.2d 588, 594 (2007).

To achieve the goal of a safe, permanent home for a juvenile, a trial court may order the cessation of reunification efforts with a parent pursuant to N.C. General Statutes, section 7B-507(b).

> In any order placing a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order, the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
>
> (1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]

N.C. Gen. Stat. § 7B-507(b)(1) (2013).

Here, the trial court made the following findings regarding the futility of continuing reunification efforts and the reasons that continuation was inconsistent with the children's health, safety, and need for a safe, permanent home:

> 13.    That it is in the best interests of [Peter], [Lauren], [Edgar], and [Jack] that this Court adopt as its Order the plan proposed by Wake County Human Services to achieve a safe, permanent home for the children within a reasonable period of time, to wit:
> -       to return home is not in the children's best interests because the parents have not remedied the problems that led to the removal of the children
> -       the children are not likely to be able to return to their parents within six months and further reunification efforts are futile
> -       to pursue adoption of [Peter], [Lauren],

[Edgar], and [Jack], the only barriers to adoption being termination of parental rights

. . .

15. [Respondent] has not accepted responsibility for his part in the children being removed from his custody and instead blames his wife, [WCHS] and his attorney.

16. [Respondent] has not secured housing sufficient for himself and the children. For several months [Respondent-father] has stated that he "is working on it" but there has been no progress.

17. [Respondent] continues to work at Wal-Mart and states that he is being promoted to a management position but [respondent] has not provided proof of promotion or pay raise.

18. [Respondent] has gone to two Parenting Adolescents classes but has failed to demonstrate that he has benefitted from those classes. At an October 22, 2013 PPAT meeting he stated that he had tried to get [Alicia] to open up. [Respondent-father's] attempt to get [Alicia] to open up consisted of asking her "How do you feel about your mother?" Social Worker Kearney stopped the conversation when [Alicia] became annoyed. [Respondent] does not understand why the conversation was inappropriate.

19. [Respondent's] visits go well half the time with him interacting positively with the children about school and their activities. At other times [respondent] is very inappropriate with the children particular [Alicia, Lauren and P.E.B] and talks to them about criminal charges pending against his brother[.] At other times he will interact with only one child at a time.

. . .

22. In an effort to address concerns with [Lauren's]

mental health a referral was made for her to begin intensive in home treatment. . . . [Lauren] was diagnosed with Mood Disorder NOS, Anxiety Disorder NOS with a rule out of Post-Traumatic Stress Disorder.

. . .

24.     [Peter] is receiving therapy on a weekly basis. He has some behavioral problems including aggressive behavior directed to his younger brothers. As a result [Peter] had to be removed from the home and placed in a therapeutic foster home. . . .

. . .

26.     . . . [Jack] is also in therapy on a weekly basis . . . . He has some emotional and behavioral problems and struggles to understand why he can't live with his family.

Respondent does not challenge these findings, and we are bound by them. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." (citations omitted)).

The trial court's findings demonstrate that respondent failed to accept responsibility for his actions, acted inappropriately during visitation with the juveniles, and failed to improve his parenting skills. Furthermore, Lauren, Peter, and Jack have demonstrated mental or behavioral disorders calling for medication and therapy. Although respondent contends that the trial court ignored evidence concerning the progress he made towards reunification, the trial court was permitted to afford greater weight to the evidence supporting his failure to make progress. *See*

*In re Whisnant*, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) (stating that when the trial court sits as both judge and juror, it is the trial judge's duty to "weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom" (citation omitted)).  Accordingly, we conclude the trial court did not err by ceasing reunification efforts.

### III

Respondent lastly argues that the trial court erred by concluding that grounds existed to terminate his parental rights.  Respondent contends that the trial court's basis for ceasing reunification efforts and ultimately terminating his parental rights was poverty.  We disagree.

North Carolina General Statutes, section 7B-1111 sets out the statutory grounds for terminating parental rights.  A finding of any one of the separately enumerated grounds is sufficient to support termination.  *In re Shepard*, 162 N.C. App. 215, 221, 591 S.E.2d 1, 5 (2004) ("During the initial adjudication phase of the trial, the petitioner seeking termination must show by clear, cogent, and convincing evidence that grounds exist to terminate parental rights. A finding of any one of those grounds is sufficient to support termination of parental rights.").  "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the

conclusions of law." *In re D.J.D.*, 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005) (citation omitted)).

In the instant case, the trial court concluded that grounds existed to terminate respondent's parental rights on the basis of neglect and the inability to show that reasonable progress has been made to correct the conditions that led to the removal of the juveniles. "Neglected juvenile" is defined as:

> [a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2013). Pursuant to General Statutes, section 7B-1111,

> [t]he court may terminate the parental rights upon a finding of one or more of the following:
>
> (1) The parent has abused or neglected the juvenile. The juvenile shall be deemed to be abused or neglected if the court finds the juvenile to be . . . a neglected juvenile within the meaning of G.S. 7B-101.
>
> (2) The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their

poverty.

N.C. Gen. Stat. § 7B-1111(a) (2013). "A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." *In re Young*, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997) (citation omitted). Where, as here, a child has been removed from the parent's custody before the termination hearing and the petitioner presents evidence of prior neglect, then "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) (citation omitted).

Here, the trial court made the following findings of fact:

> 16. That the children were adjudicated neglected and dependent by their parents by consent order entered December 12, 2012.
>
> . . .
>
> 18. [Respondent] has visited the children regularly but has been 15 to 30 minutes late for visits in the last two months on several occasions.
>
> 19. [Respondent] has still not obtained housing sufficient to meet the needs of the children. [Respondent] has been employed at Wal-Mart the entire time the children have been in foster care with an average annual income of $20,000. During the last two months he has had another job earning an additional $265.00 a week. He has given the children $400.00 a month in cash during this time instead of using that income to obtain housing.
>
> 20. [Respondent] completed two parenting classes but has

not demonstrated learned skills during visits with the children. He is not very interactive with the children and is not even able to handle all four children in the controlled setting of the visiting room at WCHS.

21. [Respondent] became visibly upset during a visit with the children January 16, 2014 because he had been contacted to pay child support for their care. The children were present and upset and [Respondent] had to be escorted out of the building.

22. Two of the children were severely physically abused after being placed in the home of [respondent's] brother.

23. During this hearing, [respondent] first stated that placement with his brother was fine and later stated that he had concerns about the children's placement with his brother prior to their placement. [Respondent] agreed to place the children with his brother and his subsequent denial of this is not credible.

24. There was graphic audiotape of the beating that was played for [respondent] and it has never been clear that [respondent] believes his brother is responsible for the beating.

25. [Respondent] contends that he did not tell [Lauren] that she was "making him choose between her and his family" regarding the criminal charges pending against his brother relating to the abuse of the children. He contends that he told [Lauren] that if the children go to live with him they are going to see their uncle and that if their uncle is there the children would have to walk away. [Respondent] either does not believe the children were traumatized by their uncle or he does not understand their trauma and fear.

26. [Respondent] has typically blamed the children's mother for the children being placed in foster care and has difficulty acknowledging his part in the children being

placed in foster care.

27.  [Respondent] has difficulty relating to the children in a meaningful way.

28.  [Respondent] does not understand the children's needs and was unaware that [Lauren] had been placed at "Old Vineyard" a residential treatment facility.

. . .

33.  That the conduct of [respondent] has been such as to demonstrate that he would not promote the healthy and orderly, physical and emotional well[-]being of the children.

34. That [respondent's] lack of compliance with the Court's orders and the Out of Home Family Services Agreement demonstrate that there is a reasonable probability of a repetition of neglect if the children were to be returned to his care.

. . .

38.  Despite [respondent] being employed and earning approximately $20,000 a year during the time the children have been in foster care, [respondent] has been in no hurry to find housing for the children.

39.  [Respondent] has expressed no empathy for the plight of his children being in foster care the last twenty one and a half months.  When he was contacted to pay child support to assist in their care he came to a visit January 16, 2014 with the children and stated, "If you (WCHS) can't afford to take [care] of the kids I will take them home to take care of them.["]

. . .

42.  The children have a bond with [respondent] but it is

not a parent-child bond.

Respondent does not challenge these findings, and we are bound by them. *See Koufman,* 330 N.C. at 97, 408 S.E.2d at 731 ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." (citations omitted)).

Based on the trial court's findings of fact regarding the prior adjudication of neglect and the findings of fact regarding respondent's failure to improve his parenting skills or take responsibility for the children's removal from the home, we conclude the trial court did not err when it determined that there was a high likelihood of repetition of neglect should the juveniles be returned to respondent's care. Further, respondent was employed but used his earnings for reasons other than to remedy the problems that led to removal of the juveniles. We reject respondent's claim that poverty was the basis for termination of his parental rights per N.C. General Statutes, section 7B-1111(a)(2). Therefore, we conclude that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2) to terminate respondent's parental rights. Accordingly we affirm the trial court's orders.

AFFIRMED.

Judges McCULLOUGH and INMAN concur.

Report per Rule 30(e).